## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

D'KIDS PARTNERS, LP,                )
individually and on behalf of       )
Kirlins, Inc., and DONALD W.        )
KIRLIN, individually and on         )
behalf of Kirlins, Inc.,            )          No. 17-3057
                                    )
      Plaintiffs,                   )
                                    )
v.                                  )
                                    )
DALE T. KIRLIN, GARY F.             )
KIRLIN, JAMES A. RAPP,              )
SCHMEIDESKAMP,                      )
ROBERTSON, NEU &                    )
MITCHELL, LLP, and                  )
HUTMACHER & RAPP, P.C.,             )
                                    )
      Defendants.                   )

### OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Appointment of Interim Receiver (d/e 41), which the Court has treated as also requesting a preliminary injunction. On April 24 and 25, 2017, this Court held a hearing on Plaintiffs' requests for a preliminary injunction and appointment of a receiver. As to the request for a preliminary

injunction, Plaintiffs have failed to carry their burden to demonstrate: 1) a probability of success on the merits; 2) inadequacy of legal remedies; and 3) a risk of irreparable harm. Plaintiffs' request for a preliminary injunction is accordingly DENIED. Plaintiff's request for appointment of an interim receiver is similarly lacking support in the record and is DENIED.

## I. BACKGROUND

Plaintiffs are Donald Kirlin, a director of Kirlins, Inc., and his company, D'Kids Partners, LP, which owns 33,030.75 voting shares of Kirlins, Inc. Two Defendants are Donald's two brothers, Dale Kirlin, Jr. (hereinafter, Dale Kirlin) and Gary Kirlin, each of whom are directors of Kirlins, Inc. and each of whom owns 33,031.75 voting shares of Kirlins, Inc. (one share more than Plaintiff Donald's ownership). Dale Kirlin is also the Chairman and Chief Executive Officer of Kirlins, Inc. Gary Kirlin is the President of Kirlins, Inc.

James Rapp, former external counsel to Kirlins, Inc. and former counsel to Plaintiff Donald Kirlin, is also named as a Defendant, as are his prior law firm, Hutmacher & Rapp, PC, and his current law firm, Schmeideskamp, Robertson, Neu & Mitchell, LLP.

Plaintiffs bring this suit individually and on behalf of Kirlins, Inc. (hereinafter, the Company). The First Amended Complaint (hereinafter, Complaint) alleges claims for civil RICO (Count I), civil RICO conspiracy (Count II), oppression of a minority shareholder (Count III), breach of fiduciary duty (Count IV), unjust enrichment (Count V), conversion (Count VI), fraudulent concealment (Count VII), equitable accounting (Count VIII), constructive trust (Count IX), interference with prospective economic advantage (Count X), legal malpractice (Count XI), and employment of manipulative and deceptive practices (Count XII).

Defendants Dale and Gary have filed a Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Rules 9(b), 12(b)(6), and 12(b)(1) (d/e 60). James Rapp and his two law firms also named as Defendants have also filed a Motion to Dismiss the Complaint under Rule 12(b)(6) (d/e 67). The Court will address these motions at a later time.

On March 13, 2017, Plaintiffs filed a Motion for Temporary Restraining Order and Appointment of Interim Receiver. Plaintiffs sought a TRO that: 1) barred Defendants from calling a vote on the proposed resolutions of the Company for 14 days or until further

Court order; 2) barred Defendants or Kirlins, Inc. from selling any of its assets for 14 days or until further Court order; and 3) prohibited Dale and Gary from transacting any business on behalf of Kirlins, Inc. until further notice of the Court. Plaintiffs also sought appointment of Rally Management Services, LLC, or another suitable entity, as interim receiver to manage the daily operations of Kirlins, Inc. until further order of the Court.

On March 14, 2017, the Court denied Plaintiffs' request for an ex parte Temporary Restraining Order. The Court ordered that it intended to consider Plaintiffs' motion as additionally requesting a preliminary injunction and set a hearing on the request for preliminary injunction and receivership. Plaintiffs did not object to such treatment of their motion.

On March 21, 2017, Plaintiff Donald Kirlin and Defendants Dale and Gary Kirlin participated in a settlement conference with Judge Schanzle-Haskins. On April 19, 2017, Plaintiffs supplemented their Motion for Temporary Restraining Order and Appointment of Interim Receiver. The supplement included notices and materials for an April 26, 2017, special meeting of the shareholders to approve the sale of selected stores. The supplement

also included an April 5, 2017, report by Rally Capital Services, which included an analysis of the validity of the decisions to sell stores previously sold and an analysis of the financial position of the Company's remaining stores earmarked for sale in 2017 (d/e 58-3, Plaintiffs' ex. 29). In the report, Rally Capital found that all of management's decisions to close the stores closed from 2014 to the date of the report appeared to be valid. The supplement also included an April 19, 2017, update from Rally Capital encouraging public notice of the proposed sales and/or an open market bidding process.

A special meeting of the shareholders and board members is scheduled to take place on Wednesday, April 26, 2017. In addition to a proposal to sell several stores to Hallmark Retail LLC, the proposal includes a sale of three stores to Kirlin's 1948, Inc., which is owned by Dale Kirlin's son, Craig Kirlin. These stores are: Store # 101 in the Quincy Mall of Quincy, Illinois, Store # 210 in Columbia, Missouri, and Store # 268 in Kansas City, Missouri.

On April 24 and 25, 2017, the Court held a hearing on Plaintiffs' requests for a preliminary injunction and appointment of a receiver. Because transcripts of that hearing are not yet available,

this order's record cites are only to the pleadings and do not include any testimony given at that hearing.

## II. JURISDICTION

The Court has subject matter jurisdiction over this lawsuit under federal question and supplemental jurisdiction.  See 28 U.S.C. §§ 1331, 1367.

Under the well-pleaded complaint rule, the federal question forming the basis of the court's jurisdiction must appear in the complaint as part of the plaintiff's claim.  Fed. R. Civ. P. 8(a)(1); Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149 (1908). Counts I and II of the Complaint arise under the civil provisions of the Racketeer Influenced & Corrupt Organization Act, a federal statute. 18 U.S.C. § 1962.  Additionally, Count XII arises under a Security and Exchange Commission regulation prohibiting employment of manipulative and deceptive devices. 17 C.F.R. 240.10b-5.  The Complaint therefore establishes the Court's federal question subject matter jurisdiction.

Further, the Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.  The state law claims form part of the same "case or controversy" as the federal

law claims.  <u>See</u> <u>id.</u>  All of the claims in the Complaint concern

Defendants' alleged mismanagement of the Company, and each of

the claims relies on the set of facts set forth at paragraphs 22 to

220 of the Complaint.  Therefore, the Court has subject matter

jurisdiction over all claims in this action.

### III.   LEGAL STANDARD

A party seeking to obtain a preliminary injunction must

demonstrate: (1) a reasonable likelihood of success on the merits;

(2) that no adequate remedy at law exists; and (3) that it will suffer

irreparable harm if the injunction is not granted.  <u>See</u> <u>Planned</u>

<u>Parenthood of Indiana, Inc., v. Comm'n of Ind. State Dep't of</u>

<u>Health</u>, 699 F.3d 962, 972 (7th Cir. 2012).  If these threshold

conditions are met, the district court then weighs the balance of the

harms to the parties if the injunction is granted or denied.  <u>Id.</u>  In

making this analysis, the Court must employ a "sliding scale"

approach, weighing the threshold factors against each other,

depending on how strongly each factor points in favor of each party.

<u>Stuller, Inc. v. Steak N Shake Enters., Inc.</u>, 695 F.3d 676, 678 (7th

Cir. 2012).  The court also must consider the public interest (non-

parties) in denying or granting the injunction.  <u>Id.</u>

The likelihood of success on the merits affects the balance of the harms. That is, the more likely it is that the plaintiff will win on the merits, the less the balance of irreparable harm needs to favor the plaintiff's position in order for the court to issue a preliminary injunction. Planned Parenthood, 699 F.3d at 972. This balancing test requires that the court "exercise its discretion to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc., 549 F.3d 1079, 1086 (7th Cir. 2008) (internal quotation marks omitted).

Whether to grant a preliminary injunction is within this Court's discretion. Ashcroft v. ACLU, 542 U.S. 656, 664 (2004) (noting that the Supreme Court and appellate courts review preliminary injunctions for an abuse of discretion); but see Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 388-91 (7th Cir. 1984) (discussing whether the abuse-of-discretion standard is appropriate, ultimately concluding the trial court committed clear factual and legal errors by granting the motion for a preliminary injunction). However, it is an extreme remedy to be

granted sparingly.  See Girl Scouts of Manitou Council, 549 F.3d at 1085 (a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it").  A court that grants a preliminary injunction should limit the scope to the minimal amount of relief necessary to protect against the alleged injury.  Boucher v. Sch. Bd. of Sch. Dist. of Greenfield, 134 F.3d 821, 826 n.6 (7th Cir. 1998) ("[A] preliminary injunction that would give the movant substantially all the relief he seeks is disfavored, and courts have imposed a higher burden on a movant in such cases.").

## IV.  ANALYSIS

### A.  Plaintiffs have not established a likelihood of success on the merits.

At the preliminary injunction stage, Plaintiff must show some likelihood of success on the merits of the lawsuit.  Girl Scouts of Manitou Council, 549 F.3d at 1096 (likelihood of success on the merits means a "better than negligible chance" on at least one of the claims and is an "admittedly low requirement").

Regarding the proposed sales to be approved at the April 26, 2017, special meeting, Plaintiffs point out the Defendants' failure to

engage an investment bank or broker to market the sales to other potential buyers or to calculate the market value of the proposed sale to Kirlin's 1948, and Defendants' failure to consider other alternatives that would allow the Company to remain in business or return greater profits to the shareholders. Plaintiffs argue that these omissions are evidence of the fraud and breach of duty alleged in the Complaint.

However, Plaintiffs set forth no facts to support their allegation that the proposed sales will be transacted at a price or terms unfair to the Company. The sales are to be made at virtually identical terms to almost all of the prior sales of the Company's stores since 2014 and to the terms under which the Company bought stores in 2013 and 2015. Affidavit of Dale Kirlin, Ex. 1 to Defendants' Supplemental Memorandum ¶¶ 14, 15 (d/e 66-1).

Under these terms, the purchase price is calculated as a function of the value of the store's inventory on the day of the sale. An external inventory team evaluates the store's inventory and calculates the value. A 47.5% multiplier is then applied to the store's Hallmark products, and a variety of percentages are applied to the store's allied products, based on the product's brand line,

condition, and other factors. This formula to calculate purchase price was established by Hallmark and has been used in Hallmark's purchase of stores from the Company and in the Company's purchase of stores. Plaintiffs submit no facts suggesting that the price of the stores to be sold to Kirlins 1948 will be calculated differently or improperly. Nor have Plaintiffs set forth any evidence to indicate that the purchase price of the stores sold to Kirlins 1948 will not reflect their fair market values. There is no evidence before the Court indicating that the sale to Kirlin's 1948 received preferential treatment.

Nor does the non-public nature of the sale process support the allegations of the Complaint. In his April 19, 2017, email to Plaintiffs' counsel Alan Farkas, Howard Samuels, Founder of Rally Capital Services, LLC, advised that the Company distribute notice of its intent to sell the stores to the public, which may attract another potential buyer. Rally Capital counseled that the existence of another potential buyer, or at least notice to a wider audience, is more likely to achieve a higher selling price of the stores and thus higher value to the Company.

However, Howard Samuels testified that he has no expertise in the sale of greeting card stores. Dale Kirlin, on the other hand, testified about the standard in the industry and most, if not all, of the Company's 151 stores were purchased in the same fashion.

Moreover, the difference in the processes does not support a finding of fraud or breach of duty. The business judgment rule presumes that the decisions and actions of a company's officers and directors are free from judicial review and are not subject to liability for honest errors in judgment. Plaintiffs have put forth no facts to suggest that Defendants acted in bad faith or in disregard of the best interests of the Company. See Goldberg v. Astor Plaza Condo. Ass'n, 971 N.E.2d 1, ¶ 63 (Ill. App. Ct. 2012). Further, Plaintiffs have not established that the proposed sales will prejudice the Company.

Plaintiffs' allegations as to the bonuses paid to Dale and Gary Kirlin also do not indicate a likelihood of success on the merits. The Company has paid bonuses to Dale and Gary Kirlin since 1975, when the Board of Directors approved a plan to issue bonuses to "officer-employees" if the Company's annual profitability reached a certain threshold amount. Dale and Gary Kirlin consistently

reinvested most of the value of their bonuses back into the Company in exchange for notes of outstanding debt. The Company currently owes each of them approximately $1 million.

Since 2009, the Company has paid Dale and Gary Kirlin $9,300 every two weeks in repayment for those notes. To make those payments, the Company uses funds obtained from one or more of the loans it has taken from several banks. Plaintiffs suggest that such a process is indicative of mismanagement. However, Plaintiffs have offered no facts to show that these payments are not in the best interests of the Company. Indeed, each payment reduces the Company's outstanding debt on those notes. Any questionability of the wisdom of using bank loan funds to repay liabilities to employees is a matter of judgment that is within the purview of the officers and the board of directors and that is protected by the business judgment rule.

As to the management of the Company's health insurance policy, Dale Kirlin's son-in-law, Jeffrey Kennedy, became the Company's agent at Blue Cross Blue Shield in 2004. Mr. Kennedy is an employee of R.W. Garrett Agency, Inc., which has managed the Company's health insurance policy since before Mr. Kennedy

was hired.  Plaintiffs set forth no facts to suggest that Mr. Kennedy's role as the agent is harmful to the Company, that he is incompetent or has mismanaged the Company's health plan, or that he has used the Company's assets or employees for his personal benefit.  The mere familial relationship between Mr. Kennedy and Dale Kirlin is insufficient to indicate a conflict of interest, fraud, or a breach of duty.

Brad Kirlin's position as the Company's securities broker similarly does not indicate a conflict of interest sufficient to support a likelihood of success on Plaintiffs' claims.  The Company's employee retirement plan is managed by CPI, Inc. and is overseen by the trustees of the Kirlin Profit Sharing Plan.  The trustees select the funds into which participating employees can invest.  The broker evaluates the trustees' selections and may make suggestions to improve the fund selection.

In 2008, Dale Kirlin's son, Brad Kirlin, became the Company's securities broker.  Plaintiffs have established no evidence which suggests that Brad Kirlin is unqualified to be the Company's securities broker, that his position has caused any prejudice the

Company, or that he has used the Company's assets or employees for his personal benefit.

Finally, the circumstances of the sale of the Company's aircraft in 2014 also does not indicate wrongdoing by Dale or Gary Kirlin. The Board of Directors placed the Citation aircraft for sale in 2008 for about $1.4 million, but they did not sell it until 2014 for about $500,000. Plaintiffs' disagreement as to the wisdom of the process by which the aircraft was sold cannot be a basis of liability because Plaintiffs have not presented evidence that Dale or Gary Kirlin acted in bad faith or in disregard of the best interests of the Company. In the absence of such evidence, the business judgment rule protects management from liability for errors in judgment. See Goldberg, 971 N.E.2d 1, ¶ 63.

Nor is there any indication that the aircraft was improperly used for personal benefit. Defendants have submitted evidence to show that the aircraft was purchased for officer and employee travel to the Company's hard-to-access stores. The aircraft's logs indicate that 94% of its use was for business. And, the Company implemented a plan for reimbursement to the Company for the remaining personal use of the plane.

Based on the foregoing, Plaintiffs have not demonstrated a likelihood of success on the merits.

## B. Plaintiffs have not established that no adequate remedy at law exists.

To obtain a preliminary injunction, the movant must demonstrate the absence of an adequate remedy at law. Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984). Plaintiffs have failed to do so. Concededly, money damages may be insufficient where (1) the plaintiff is so poor he would be harmed in the interim by the loss of the monetary benefits, (2) the plaintiff would be unable to finance the lawsuit without the money he wishes to recover, (3) damages from the defendant would be unobtainable because the defendant will be insolvent prior to the final judgment, and (4) the nature of the plaintiff's loss may make damages difficult to calculate. Id. Plaintiffs have failed to establish money damages are insufficient under any of these prongs.

Given the Company's outstanding liabilities, monthly operational losses, and overall financial situation, the Company may be unable to pay legal damages in the event of a verdict in

favor of Plaintiffs. See Roland Machinery, 749 F.2d at 386 (inadequate remedy at law if defendant will be insolvent at final judgment such that plaintiff could not obtain damages from defendant). However, many stores remain to be sold, so the financial status of the Company can not be determined on this record. Further, Dale and Gary Kirlin's potential liability in their individual capacities provides Plaintiffs an adequate remedy at law. Because the Complaint alleges that Dale and Gary engaged in self-dealing, fraudulent activity, and breaches of their fiduciary duties as directors and officers, these claims, if proven, may pierce the corporate veil that would otherwise protect them from personal liability. Song v. Rom, No. 15-1438, 2016 WL 726899 (N.D. Ohio Feb. 24, 2016) (where a shareholder operates a company as a mere tool for his benefit and misuses the company, he is not protected by the limited liability principle and may be personally liable for injury he caused to third-party creditor by his fraud, siphoning of assets, or other wrongdoing). Plaintiffs could therefore collect damages from Dale and Gary in their personal capacities.

Further, Dale Kirlin owns monies that could be subject to a legal damages order. At the April 25 hearing, Dale Kirlin testified

that he owned sufficient funds to guarantee the bank loan to Kirlins 1948, Inc. for its approximately $600,000 purchase from the Company. Because Dale Kirlin owns funds that could be subject to a legal damages order, Plaintiffs cannot show that damages would be unobtainable because the defendant would be insolvent prior to the final judgment. Plaintiffs therefore have not established that their remedy at law would be inadequate.

Further, Defendants have refuted Plaintiffs' assertion of the necessity to enjoin the April 26, 2017, meeting to approve the proposed sales to Kirlin 1948. Simply, the market for brick-and-mortar greeting card stores is meager. A meager market means an injunction would be unlikely to result in a sale more favorable to the Company. Card stores nationwide are closing at an alarming rate. In fact, the Company is regularly approached about buying out other stores by similar families and Hallmark. Dale Kirlin explained that few potential buyers exist in the current market, due to the same conditions that caused the decline in the Company's profitability—the explosion of internet shopping, young people's preference for e-cards and printed photo books over paper cards and photo albums, Hallmark's distribution of its greeting cards to

"mass channel" stores such as grocery stores and big-box stores, the rise in postage costs, and other factors. The unlikely existence of another buyer refutes the necessity of Plaintiffs' requested injunction of the meeting to approve the sales to Kirlins 1948.

## C. Plaintiffs have not shown a risk of irreparable harm.

To obtain a preliminary injunction, the movant must "establish that it will be irreparably harmed if it does not receive preliminary relief, and that money damages and/or an injunction ordered at final judgment would not rectify that harm." Abbott Labs. v. Mead Johnson & Co, 971 F.2d 6, 16 (7th Cir. 1992); Roland Machinery, 749 F.2d at 386 ("The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief.").

Plaintiffs have not established the urgency necessary to justify the issuance of a preliminary injunction. Donald Kirlin has been aware of the proposed sale of all or a portion of the Company's stores at least since 2006. The Kirlin's, Inc. Joint Unanimous Written Consent of Shareholders and Directors, dated March 24,

2006, and signed by Donald, Dale, and Gary Kirlin, resolves that Dale and Gary are authorized to negotiate with Hallmark, Inc. regarding the sale of all or a portion of the Company's stores. Defendants' ex. 14. Additionally, the Company has been selling and closing its stores since 2014. Plaintiffs have not shown the existence of the urgency required for a preliminary injunction.

Moreover, Plaintiffs have only alleged a risk of monetary injury. The non-public process employed for the proposed sales and the purchase price of those sales affect the monetary value of the Company and its shares. Plaintiffs' allegations regarding the management of the Company's requirement and health plans, the bonuses paid to Dale and Gary and the repayment of the loan notes, and the sale of the aircraft similarly affect strictly the monetary value of the Company.

Plaintiff Donald Kirlin stated that Store #101 (one of the stores proposed to be sold to Kirlins 1948) was one of the first stores of the Company where Plaintiff Donald worked as a child and formed fond family memories. However, the family history associated with the store does not remove the proposed sale from the context of a financial business transaction.

Plaintiffs also argue that the three stores proposed to be sold to Kirlins 1948 are among the most profitable of the Company. The profitability of the stores may affect the wisdom of the ultimate purchase price of the sale, as well as the effect that the sales will have on the Company, but such impacts are strictly monetary.

Finally, Plaintiffs argue that sale of the three stores "will put an end to the Company." Plaintiffs' Memorandum of Law at 1 (d/e 42). However, Plaintiffs set forth no facts to substantiate this claim. Regardless, Dale and Gary were clear that the Company intends to sell all of its remaining 22 stores, effectively closing the Company and mitigating losses. Defendants' Supplemental Memorandum (d/e 66). Therefore, Plaintiffs have not established a risk of irreparable harm to justify issuance of a preliminary injunction.

### D. The balance of the harms to the parties weighs in favor of Defendants.

Even if the Court found that Plaintiffs met their burden to show probability of success, inadequacy of a legal remedy, and irreparable harm, the balance of the harms to the parties weighs in favor of allowing the April 26 meeting to proceed. See Stuller, 695 F.3d at 678. The $370,000 monthly operational losses of the

Company, the June 2017 maturity date of the Company's $2.5 million CrownMac loan, and the October 2017 maturity date of the Company's $1.78 million Homebank loan support the immediate selling of the stores.  <u>See</u> Affidavit of Gary Kirlin, Ex. 1 to Defendants' Memorandum Opposing TRO and Receivership ¶ 29 (d/e 46-1).  The speculative nature of any additional value that the Company may gain from using a different process to sell the remaining stores is outweighed by the harm the Company immediately suffers from a delay in the sales.

Because Plaintiffs have not met their burden to demonstrate a likelihood of success on the merits, the inadequacy of legal remedies, and a risk of irreparable harm, their request for preliminary injunction is DENIED.

**E.    Plaintiffs have not demonstrated a need for appointment of a receiver.**

Plaintiffs also seek the appointment of an interim receiver to manage the day-to-day affairs of the Company pending resolution of this lawsuit.  The Court's considerations as to whether to appoint a receiver are very similar to the elements required for an injunction. The factors for the Court to consider include: (1) the defendant's

fraudulent conduct; (2) imminent danger that property will be lost or squandered; (3) inadequacy of available legal remedies; (4) the probability that the harm to plaintiff from denial of the appointment will surpass the injury to the opponent; (5) the plaintiff's likelihood of success and the possibility of irreparable injury to the plaintiff; and (6) whether the appointment will serve the plaintiff's interests. Consolidated Rail Corp. v. Fore River Railway Co., 861 F.2d 322, 326-27 (1st Cir. 1988).

Like a preliminary injunction, appointment of a receiver is an "extraordinary and drastic remedy" and is only appropriate in cases of "urgent necessity." 805 ILCS Ann. 5/12.56 n.3; see Witters v. Hicks, 790 N.E.2d 5 (Ill. App. Ct. 2003) (appointment of receiver justified in shareholder's individual and derivative action against majority shareholder and officer who converted rebate funds owed to company for his own use, retained rent checks rather than depositing them into corporate accounts, failed to keep accurate books on interest income generated by employee loan program, and used employees and corporate assets for personal, separate business). Given that Plaintiffs have not met their burden to substantiate their request for a preliminary injunction, they

similarly have not established the propriety of appointment of a receiver. Plaintiffs' request for appointment of a receiver is accordingly DENIED.

ENTER: April 26, 2017

FOR THE COURT:

s/Sue E Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE